UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

FELTON MAGEE                                          CIVIL ACTION

VERSUS                                               NO. 09-3142

SHERIFF ROBERT CROWE ET AL.                          SECTION "F" (2)


**REPORT AND RECOMMENDATION**

Plaintiff, Felton Magee, is a prisoner currently incarcerated in the B.B. "Sixty" Rayburn Correctional Center in Angie, Louisiana. He filed this complaint pro se and in forma pauperis pursuant to 42 U.S.C. § 1983 against Washington Parish Sheriff Robert Crowe, Wardens Topps and Cummings of the Washington Parish Jail, Washington Parish Sheriff's Deputies Pinac and Rester, and Sergeant Angela Knight. Magee alleges that defendants violated his constitutional rights in various respects while he was incarcerated in the Washington Parish Jail for a six-month period from December 27, 2008 through June 2009. He seeks monetary damages and injunctive relief. Record Doc. No. 1 (Complaint at ¶ V).

On June 11, 2009, I conducted a telephone conference in this matter. Participating were plaintiff pro se and Pete Matthews, counsel for defendants. Plaintiff was sworn and testified for all purposes permitted by Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985), and its progeny.

## THE RECORD

Plaintiff confirmed that the claims he asserts in this case are based exclusively on events that occurred while he was incarcerated in the Washington Parish Jail from December 27, 2008 to early June 2009, when he was transferred. He stated that he was brought to the jail on a charge of violation of his parole. Magee testified that he was on parole for a 2003 conviction on a drug charge. He said his parole was revoked sometime in May 2009, and that he is currently serving a prison sentence of up to two years, but probably more like six or seven months.

As to his first claim, Magee confirmed that it concerns an incident in which he was placed in disciplinary isolation for 21 days. In his written submissions, Magee alleged that "[o]n or about Feb[ruary] 3, 2009, [he] was involved in an altercation with another inmate" and "was placed in an isolation cell for 21 days without receiving a disciplinary report or a disciplinary hearing to contest the incident and tell his side of the story." Record Doc. No. 1 (Complaint at ¶ IV). He alleged that in the isolation cell he "had to sleep on the floor" and use a "hole in the floor . . . as a restroom." Id. (Attachment to Complaint at ¶ (1)). He alleged that he was permitted to take "only two showers" during the 21-day period and that "[b]y . . . sleeping on the floor in these conditions his right hand got infected." Id.

Magee testified that he became involved in a physical altercation with another inmate when the other inmate spit on him while he was sleeping. He said that guards broke up the altercation and removed him to "a place which . . . is like a mentally insane cell," a place where mental patients are usually kept. He described it as a separate cell "that used to be padded, but all that is ripped out of it," with no bedding or anything else in the cell, except a hole in the floor. Magee stated that he was kept in this cell alone for 21 days. He testified that he received no written disciplinary charge or any hearing. He said he was simply told by a deputy that he had been placed in the cell for "fighting and 'your ass gonna be there until we let you out of here.'"

Magee stated that he was returned to the general population after 21 days. He said that he had suffered cuts on his hand during his fight with the other inmate and that his hand became infected during his 21 days in the isolation cell. He testified that he was provided with medical attention within a few hours of the fight. He confirmed that he had received and reviewed the medical records which I ordered defendants to produce, Record Doc. Nos. 6, 7, 21, 26, and that the records are accurate.

Plaintiff testified that he had no mattress or sheets in the isolation cell and that he slept only on a piece of foam cushion. He stated that, during the 21 days he was there, "the toilet drainage backed up" while he was sleeping and his hand became swollen and infected by the drainage within four or five days. Magee confirmed the reference in his

medical records that, when his hand became swollen, he was seen by Dr. Talbot on February 24, 2009, and the doctor provided him with medication, including antibiotic pills. He testified that the infection cleared up within a couple of weeks. He said his hand healed, but "I started getting numbness in his hand," which he said he continues to experience. He testified that the doctor told him it might "take a while" for his hand to heal completely. Magee described the conditions in the isolation cell as unsanitary, including that he could not flush the toilet in the cell, but it could only be flushed from outside by the deputy on duty, who would flush it only sometimes, "maybe twice a day . . . sometimes once," during the 21-day period. He complained that waste from the toilet would seep into the cell and could not be cleaned up unless the deputies permitted it, and he said that he had to eat in that cell while this occurred.

As to his claim that he was threatened or harassed by defendants, Magee stated in his written submissions that "[o]n Feb[ruary] 27, 2009, . . . [he] was told by Deputy Pinac to watch his movement and he was on his list to be maced." Record Doc. No. 1 (Attachment to Complaint at ¶ (2)). He alleged that he complained to Warden Tubbs about Pinac's harassment, but no action was taken to curtail it.

Magee testified that Deputy Pinac engaged in verbal confrontations with him and orally threatened him. He said the harassment occurred "several times," maybe "four or five times," both while Magee was in isolation and after he had been returned to the

dorm. Plaintiff conceded that Pinac did not ever spray him with mace or hit him, although Pinac shoved him at one point, but Magee suffered no physical injuries as a result of the shove or the threats. He said Deputy Pinac engaged in this harassment in an attempt to "demean" him.

In his written submissions, plaintiff also alleged that "Deputy Josh Rester and Sergeant Angela Knight placed him in an isolation cell because he filed a complaint to the Warden against them for misplacing his medication at pill call." Record Doc. No. 9 (Statement of Facts at ¶ (3)(D)). He alleged that, when he complained to Deputy Rester on March 14, 2009 "about his medication being missing," Rester told Sgt. Knight, who "immediately ordered petitioner Magee to be placed in isolation for 14 days." Record Doc. No. 1 (Attachment to Complaint at ¶ (3)).

As to this claim, Magee testified that he does not complain in this case that his medical treatment was inadequate. Instead, he confirmed the reference in his medical records that the doctor who was treating his hand had recommended in his February 24, 2009 "Progress Notes" that, "if possible, move [Magee] to more sanitary environment to help healing." Record Doc. No. 26 (Medical Records). Thus, Magee stated that his complaint in this regard is that defendants did not follow the doctor's recommendation to move him out of the unsanitary isolation cell to more sanitary living conditions while his hand was healing. He stated that the reason he had to stay on antibiotics for so long

was that he remained in the unsanitary isolation cell without a mattress and slept on the floor. He testified that, about a week after leaving the isolation unit, the doctor gave him further treatment for his hand, including changing his medication dosage and putting him on "nerve pills" for the numbness in his hand. He confirmed the notation in his medical records that the doctor prescribed cyclobenzaprine, a generic name for Flexeril, for his hand on March 26, 2009.

Magee testified that – like Deputy Pinac – Deputy Rester also harassed him while he was in isolation by taunting him, clicking the lights in the cell on and off and spraying mace into the air. He confirmed the allegations in his written submissions that Deputy Rester frequently misplaced his medications, then prompted Sgt. Knight to place him in isolation again when he complained about it. He also complained that no formal grievance or complaint or administrative remedies procedure is available in the Washington Parish Jail.

As to his claim alleging racial discrimination in the selection of trustees at the Washington Parish Jail, Magee asserted in his written submissions that Warden Cummings discriminates against African-American inmates in the jail in the assignment of trustee positions and signature bonds. He claimed that, although the inmate population in the jail is 85% African-American, "the trustee positions are mainly given to the white inmates." Record Doc. No. 1 (Attachment to Complaint at ¶ (4)). He alleged that

Warden Cummings "will allow white inmates without D.O.C. time to become trustees" but "will inform black inmates that they must have D.O.C. time before becoming a trustee." Record Doc. No. 9 (Statement of Facts at ¶ 2(a)). He wrote that 14 of the 18 trustees at the jail were white, while only four were black. Id.

Magee testified that Warden Cummings discriminates in favor of white inmates in the ways alleged in his written submissions. He testified that he asked to become a trustee, but Warden Cummings told him he had to go through certain procedures that were not required of white inmates. Asked what privileges a trustee is given at the Washington Parish Jail that were denied to him, Magee testified, "not too much of nothin'. I wouldn't want it now. . . . They go outside, have contact visits, special visits . . . that type of stuff."

## ANALYSIS

### I. STANDARDS OF REVIEW

"A federal court may dismiss a claim in forma pauperis 'if satisfied that the action is frivolous or malicious.'" Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994) (quoting former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as amended). A complaint is frivolous "if it lacks an arguable basis in law or fact." Davis v. Scott, 157 F.3d 1003, 1005 (5th Cir. 1998); Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994). The law "'accords judges not only the authority to dismiss a claim based on

an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.'" Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

The purpose of a Spears hearing is to dig beneath the conclusional allegations of a pro se complaint, to ascertain exactly what the prisoner alleges occurred and the legal basis of the claims. Spears, 766 F.2d at 180. "[T]he Spears procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners." Davis, 157 F.3d at 1005. The information elicited at such an evidentiary hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e). Wilson v. Barrientos, 926 F.2d 480, 481 (5th Cir. 1991); Adams v. Hansen, 906 F.2d 192, 194 (5th Cir. 1990). "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists." Spears, 766 F.2d at 182.

The court may make only limited credibility determinations in a Spears hearing, Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997) (citing Cay v. Estelle, 789 F.2d 318, 326-27 (5th Cir. 1986), overruled on other grounds by Denton v. Hernandez, 504 U.S. 25  (1992)), and may consider and rely upon documents as additional evidence, as long as they are properly identified, authentic and reliable.  "The Court should allow

proper cross-examination and should require that the parties properly identify and authenticate documents." Id. (citing Wilson, 926 F.2d at 482-83).

After a Spears hearing, the complaint may be dismissed as legally frivolous if it lacks an arguable basis in law, Jackson v. Vannoy, 49 F.3d 175, 176-77 (5th Cir. 1995); Moore v. Mabus, 976 F.2d 268, 269 (5th Cir. 1992), or "as factually frivolous only if the facts alleged are 'clearly baseless,' . . . [or] when the facts alleged rise to the level of the irrational or wholly incredible." Id. at 270.

"'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.'" Davis, 157 F.3d at 1005 (quoting McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997)). "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section 1915(d) standard is not." Moore, 976 F.2d at 269. A prisoner's in forma pauperis complaint which fails to state a claim may be dismissed sua sponte at any time under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

In this case, plaintiff's complaint may be dismissed under 28 U.S.C. § 1915(e) and 42 U.S.C. § 1997e(c)(1), either as frivolous because it lacks an arguable basis in law or under Rule 12(b)(6) in light of his testimony explaining the factual basis of his claims.

Plaintiff's complaint, as amended by his testimony at the <u>Spears</u> hearing, fails to state a claim under the broadest reading.[1]

## II.    DISCIPLINARY ACTION

Magee's complaint that he was placed in disciplinary isolation on two separate occasions, for 21 days and 14 days, without justification or process fails to establish any constitutional violation.

In <u>Sandin v. Connor</u>, 515 U.S. 472, 481-83 (1995), the Supreme Court held that analysis of a convicted prisoner's due process claim relating to prison disciplinary action begins with determining whether a constitutionally protected liberty interest exists. "Liberty interests protected by the Fourteenth Amendment may arise from two sources– the Due Process Clause itself and the laws of the States." <u>Hewitt v. Helms</u>, 459 U.S. 460, 466 (1983). In <u>Sandin</u>, the Supreme Court recognized that although the States may create liberty interests, "these interests will generally be limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." <u>Sandin</u>, 515 U.S. at 484 (citations omitted). Thus, in <u>Sandin</u>, when a prisoner was placed in disciplinary segregation for 30 days and the discipline did not inevitably affect the duration of his sentence, the Court held that due process does <u>not</u>

_____

[1] Pro se civil rights complaints must be broadly construed, <u>Moore</u>, 30 F.3d at 620, and I have broadly construed the complaint in this case.

require that a prisoner be afforded the procedural mechanisms previously prescribed in Wolff v. McDonnell, 418 U.S. 539 (1974), and Hewitt, 459 U.S. at 460.

"[T]he Due Process Clause does not protect every change in conditions of confinement which has a substantial adverse effect upon a prisoner." Madison v. Parker, 104 F.3d 765, 767 (5th Cir. 1997). The Madison court held that a prisoner's 30-day commissary and cell restrictions imposed as punishment for disciplinary violations were "merely changes in the conditions of his confinement and do not implicate due process concerns." Id. at 768; accord Dixon v. Hastings, 117 Fed. Appx. 371, 2005 WL 17382, at *1 (5th Cir. 2005); Malchi v. Thaler, 211 F.3d 953, 957-58 (5th Cir. 2000). The Madison court further held that such restrictions are "penalties, which do not represent the type of atypical, significant deprivation in which a state might create a liberty interest." Madison, 104 F.3d at 767. Examples of disciplinary hardships that would qualify as so atypical and significant as to implicate due process considerations include unwanted administration of antipsychotic drugs, involuntary commitment to a mental hospital or extension of the prisoner's sentence for his underlying criminal conviction. Sandin, 515 U.S. at 493.

In Wolff, the Supreme Court held that because disciplinary proceedings are not part of a criminal prosecution, the prisoner is not afforded "the full panoply of rights" provided in criminal proceedings. Wolff, 418 U.S. at 556. Nevertheless, the Wolff court

held that prison officials must afford the prisoner <u>some</u> due process in disciplinary proceedings before imposing punishment, including notice of the violation, a hearing and some opportunity to present evidence on the prisoner's behalf. <u>Id.</u>

In the instant case, Magee alleges that prison officials provided him with no reason or process in placing him in disciplinary isolation on two occasions for 21 days and 14 days. However, <u>Sandin</u> makes clear that no particular process is required for this type of punishment, unless something more than a mere change in condition of confinement occurs. <u>See</u> <u>Madison</u>, 104 F.3d at 768. This punishment does not constitute such an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" that particular forms of process were required. <u>Sandin</u>, 515 U.S. at 484. Magee has failed to make any showing that the time spent in solitary confinement extended his total time in prison or otherwise resulted in "atypical, significant" hardships. <u>Sandin</u>, 515 U.S. at 484; <u>Madison</u>, 104 F.3d at 768; <u>Dixon</u>, 2005 WL 17382, at *1. As the record stands, nothing about Magee's stay in disciplinary isolation resulted in a violation of due process or other constitutional rights.

Thus, plaintiff's due process claim should be dismissed with prejudice.

III.    <u>CONDITIONS OF CONFINEMENT</u>

Magee testified that he was subjected to unconstitutional conditions of confinement. Specifically, he complained of unsanitary and uncomfortable living

conditions while he was in the isolation cell for 21 days, including that he had to sleep on the floor without any mattress or sheets and he slept only on a piece of foam cushion. He complained that his right hand got infected because he had to use a hole in the floor as a toilet; the toilet could only be flushed from outside by the deputy on duty, who flushed it only once or twice a day; the toilet drainage backed up into the cell while he was sleeping and could not be cleaned up unless the deputies permitted it; he had to eat in that cell while this occurred; and he was only allowed to take two showers during the 21-day period.

Magee was a pretrial detainee for the time period about which he complains. Regardless whether an inmate is a pretrial detainee or a convicted prisoner, however, the standard of liability is the same for episodic acts or omissions of jail officials of the type alleged in this case. Olabisiomotosho v. City of Houston, 185 F.3d 521, 526 (5th Cir. 1999); Hamilton v. Lyons, 74 F.3d 99, 104 n.3 (5th Cir. 1996); Hare v. City of Corinth, 74 F.3d 633, 650 (5th Cir. 1996). In Hare, the Fifth Circuit held that the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs and that a jail official's liability for episodic acts or omissions cannot attach unless the official had subjective knowledge of a substantial risk of serious harm to the inmate, but responded with deliberate indifference to that risk. Id.

There is nothing in plaintiff's written submissions or <u>Spears</u> testimony from which it might be inferred that the conditions he described were the result of a prison official's act either "implement[ing] a rule or restriction or otherwise demonstrat[ing] the existence of an identifiable intended condition or practice" or that the "official's acts or omissions were sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by other officials, to prove an intended condition or practice." <u>Id.</u> at 645. On the contrary, in this case, "'the complained-of harm is a particular act or omission of one or more officials,'" <u>Olabisiomotosho</u>, 185 F.3d at 526 (quoting <u>Scott v. Moore</u>, 114 F.3d 51, 53 (5th Cir. 1997)), and the deliberate indifference standard enunciated in <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976), applies.

Applying this standard to Magee's claims, his allegations do not constitute violations of the Constitution. Two requirements must be met before Section 1983 liability will arise for constitutional violations relating to conditions of confinement of the type plaintiff described.

First, the alleged deprivation must objectively be "sufficiently serious," which means that "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." <u>Farmer v. Brennan</u>, 511 U.S. 825, 847 (1994). To rise to the level of a constitutional violation, the conditions must be "'so serious as to deprive [plaintiff] of the minimal measure of life's necessities,' in this case the basic human need

14

for sanitary conditions." Alexander, 351 F.3d at 630 (quoting Woods v. Edwards, 51 F.3d 577, 581 (5th Cir. 1995)).

Second, the inmate must show that a prison official was deliberately indifferent to inmate health or safety. Farmer, 511 U.S. at 847. A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837 (emphasis added).

> The Supreme Court has recently reaffirmed that "deliberate indifference" is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. . . . The "deliberate indifference" standard permits courts to separate omissions that "amount to an intentional choice" from those that are merely "unintentionally negligent oversight[s]."

Southard v. Texas Bd. of Crim. Justice, 114 F.3d 539, 551 (5th Cir. 1997) (citing Board of County Comm'rs v. Brown, 520 U.S. 397, 410 (1997) (other citations omitted)) (emphasis added). "'Subjective recklessness,'" as used in the criminal law, is the appropriate test for deliberate indifference." Norton, 122 F.3d at 291 (citing Farmer, 511 U.S. at 838-40).

In the instant case, the "deliberate indifference" standard applies because all of plaintiff's complaints concerning the conditions relate to jail officials' episodic acts or omissions, and no challenge is made to "the general conditions and restrictions of

[plaintiff's] confinement, knowingly imposed." Hamilton, 74 F.3d at 104 n.3. Thus, Magee must allege facts sufficient to establish that any defendant knew that plaintiff faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it. Plaintiff fails to allege any such facts. Although the conditions he described may be unpleasant, Magee has failed to allege either deprivations so extreme that they violate the United States Constitution or sufficiently serious harm resulting from these problems to meet the requirements of Farmer, and this claim does not rise to the level of a constitutional violation. The conditions that Magee experienced did not result in "sufficiently serious" conditions posing "a substantial risk of serious harm." Farmer, 511 U.S. at 834.

A.    Sanitation

Magee complained that he had to use a hole in the floor as a toilet, the toilet was flushed only once or twice a day, the toilet drainage backed up into the cell while he was sleeping and could not be cleaned up unless the deputies permitted it, he had to eat in the cell while this occurred, he was only allowed to take two showers during the 21 days that he was in the isolation cell, and his hand became infected as a result of these conditions. A short term sanitation restriction or problem, although admittedly unpleasant, does not amount to a constitutional violation. Whitnack v. Douglas County, 16 F.3d 954, 958 (8th Cir. 1994); Knop v. Johnson, 977 F.2d 996, 1013 (6th Cir. 1992); Robinson v. Illinois

State Correspondence. Ctr., 890 F. Supp. 715, 720 (N.D. Ill. 1995). "[J]ails must provide only reasonably adequate hygiene and sanitation conditions." Burton v. Cameron County, 884 F. Supp. 234, 241 (S.D. Tex. 1995) (citing Green v. Ferrell, 801 F.2d 765, 771 (5th Cir. 1986)).

In two cases, the Fifth Circuit has held that virtually permanent conditions of cells that contained excrement and other filth violate the Eighth Amendment. In Harper v. Showers, 174 F.3d 716, 716 (5th Cir. 1999), there were "continual" conditions of "filthy, sometimes feces-smeared cells," and in Gates v. Cook, 376 F.3d 323, 338 (5th Cir. 2004), there were "'extremely filthy' [cells] with crusted fecal matter, urine, dried ejaculate, peeling and chipping paint, and old food particles on the walls."

By contrast, in Davis, the Fifth Circuit found no constitutional violation when a prisoner was locked in a "management cell" for three days, where the cell was, "according to Davis, 'just filthy, with 'blood on the walls and excretion on the floors and bread loaf on the floor.'" Davis, 157 F.3d at 1004, 1006. The appeals court quoted the Supreme Court's holding that "'the length of confinement cannot be ignored. . . . A filthy, overcrowded cell . . . might be tolerable for a few days and intolerably cruel for weeks or months.'" Id. at 1006 (quoting Hutto v. Finney, 437 U.S. 678, 686-87 (1978)). The Fifth Circuit found that "Davis did not suffer an extreme deprivation of any 'minimal

civilized measure of life's necessities'" when he was confined in the cell for only three days. Id. (quoting Wilson, 501 U.S. at 304).

Similarly, in the instant case, the conditions Magee experienced occurred during a short period of time and were not extreme deprivations falling below any minimal civilized measure of life's necessities. See Davis, 157 F.3d at 1006 (no constitutional injury when plaintiff was confined in "filthy" cell for three days) (citing Smith v. Copeland, 87 F.3d 265, 269 (8th Cir. 1996) (no Eighth Amendment violation when prisoner was exposed for four days to raw sewage from overflowed toilet in his cell)); Carter v. Strain, No. 09-15, 2009 WL 3231826, at *2 (E.D. La. Oct. 1, 2009) (Knowles, M.J.) (prisoner's complaint that he was allowed only one shower during eight-day period was "merely a brief deprivation which would not violate the [C]onstitution") (citing Hamilton v. Lyons, 74 F.3d 99, 106 n.8 (5th Cir. 1996) (denial of a shower for a three-day period did not rise to the level of a constitutional deprivation); Holloway v. Gunnell, 685 F.2d 150, 156 n.6 (5th Cir. 1982) ("A number of courts have held that one or two showers a week is sufficient to satisfy constitutional requirements."); McAllister v. Strain, No. 08-5174, 2009 WL 500560, at *3 (E.D. La. Feb. 25, 2009) (Feldman, J.) (denial of shower for seven-day period did not amount to a constitutional violation)); Eady v. Head, No. CIVASA04CA0648 NN, 2006 WL 2663776, at *3 (W.D. Tex. Sept. 15, 2006) ("Going without a shower and being exposed to the foul smell of a backed-up

shower for two days on two separate occasions does not show deliberate indifference to Plaintiff's basic human needs or constitute cruel and unusual punishment in violation of the Eighth Amendment.").

Furthermore, although Magee alleges that his hand became infected because of the unsanitary conditions in the isolation cell, he testified, and his medical records confirm, that the infection was treated promptly and continuously, and cleared up within a couple of weeks. Thus, the facts that plaintiff has alleged fail to show that any defendant knew that he faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it.

Thus, this claim advances a legally frivolous argument and fails to state a claim for relief under Section 1983.

B.    Mattress/Bedding

It also cannot be said that Magee faced a substantial risk of serious harm in the constitutional sense from the temporary lack of a mattress for ten days. Although the Fifth Circuit has not yet addressed this question, the Sixth Circuit at least once, and the Eighth Circuit repeatedly, has held in recent years that deprivation of bedding for a limited period of time is not per se unconstitutional. See Grissom v. Davis, No. 02-1916, 2003 WL 343248, at *2 (6th Cir. Feb. 12, 2003) (seven days without mattress, sheets or blanket was not a deprivation of basic human needs and did not cause plaintiff to suffer

serious harm); O'Leary v. Iowa State Men's Reformatory, 79 F.3d 82, 84 (8th Cir. 1996) (sleeping without mattress or blanket for four days on a concrete slab in cell located ten feet from exterior door during winter did not deny plaintiff the minimal civilized measures of life's necessities); Seltzer-Bey v. Delo, 66 F.3d 961, 964 (8th Cir. 1995) (placement in strip cell without clothes, running water, mattress or blanket for two days was not unconstitutional when there was no evidence that inmate suffered any injury or adverse health consequences or that jail officials knew of and disregarded an excessive risk to his health and safety); Williams v. Delo, 49 F.3d 442, 445 (8th Cir. 1995) (placement in strip cell without clothes, running water, mattress, pillow, sheets or blanket for four days, when plaintiff sought no treatment for any resulting medical condition or injury, was not unconstitutional). Provision of bedding falls within those matters committed to prison administrators' sound discretion. Kot v. Matty, No. 90-7644, 1991 WL 246906, at *2 (E.D. Pa. November. 15, 1991), aff'd, 980 F.2d 723 (3d Cir. 1992).

Although former Chief Judge Little of the Western District of Louisiana has declared that "[a] mattress is a basic human right, which must be provided to a detainee," the Fifth Circuit has not adopted his position and the cases that he cited to support that far-reaching proposition do not, on closer examination, mandate that conclusion. Oladipupo v. Austin, 104 F. Supp. 2d 626, 639 (W.D. La. 2000) (Little, C.J.) ("Oladipupo I") (citing Thompson v. City of Los Angeles, 885 F.2d 1439, 1449 (9th Cir.

1989) ("valid Fourteenth Amendment claim where pretrial detainee forced to sleep on the floor for two nights"); <u>Lyons v. Powell</u>, 838 F.2d 28, 31 (1st Cir. 1988) ("pretrial detainee's allegation that he was forced to sleep on floor mattress sufficient condition to show deprivation of due process"); <u>Anela v. Wildwood,</u> 790 F.2d 1063, 1067 (3d Cir. 1986) ("allegation that City failed to provide bed or mattress to pretrial detainees states actionable constitutional claim"); <u>Lareau v. Manson</u>, 651 F.2d 96, 105 (2d Cir. 1981) ("prison's use of floor mattresses for pretrial detainees unconstitutional 'without regard to the number of days for which a prisoner is so confined'"); <u>Martino v. Carey</u>, 563 F. Supp. 984, 1002 (D. Or. 1983) ("fact that jail overcrowding forced some pretrial detainees to sleep directly on floor contributed to finding that overcrowded conditions violated detainees' Fourteenth Amendment rights"); <u>Vazquez v. Gray</u>, 523 F. Supp. 1359, 1365 (S.D.N.Y. 1981) ("use of floor mattresses for pretrial detainees unconstitutional")); <u>Oladipupo v. Austin</u>, 104 F. Supp. 2d 654, 659 (W.D. La. 2000) (Little, C.J.) ("<u>Oladipupo II</u>") (citing the same cases).

Those cases applied outdated legal standards different from the current "deliberate indifference" standard for an episodic omission by jail officials. Thus, I find the Eighth Circuit's reasoning and holdings in its recent cases more persuasive in the instant case than the <u>Oladipupo</u> decisions and cases cited therein.

Magee alleges no serious harm or risk of serious harm in the constitutional sense, and the court can perceive none under the circumstances described in plaintiff's testimony and written submissions, from being deprived of a mattress for ten days, despite his minor injuries. Carter, 2009 WL 3231826, at *3 (citing McAllister, 2009 WL 500560, at *2-3; Desroche v. Strain, 507 F. Supp.2d 571, 580-81 (E.D. La. 2007) (Feldman, J.)).

Accordingly, plaintiff's claim based on the conditions of the isolation cell is legally frivolous and fails to state a claim upon which relief can be granted under Section 1983. It must be dismissed pursuant to 28 U.S.C. § 1915(e).

IV.     THREATS/HARASSMENT

Plaintiff's allegations that he was threatened and harassed by defendants Deputies Pinac and Rester are not cognizable under Section 1983. Robertson v. Plano City, 70 F.3d 21, 24 (5th Cir. 1995). The Robertson court noted that "in the Eighth Amendment context, 'mere threatening language or gestures of a custodial officer do not, even if true, amount to constitutional violations.'" Id. (citation omitted); accord Watson v. Winborn, 67 Fed. Appx. 241, 2003 WL 21108479, at *1 (5th Cir. 2003); Calhoun v. Hargrove, 312 F.3d 730, 734 (5th Cir. 2002); Vessell v. Gusman, No. 06-2294, 2006 WL 2067723, at *2 (E.D. La. July 19, 2006) (McNamara, J.) (citing Calhoun, 312 F.3d at 734; Siglar v.

Hightower, 112 F.3d 191, 193 (5th Cir. 1997); Bender v. Brumley, 1 F.3d 271, 274 n.4 (5th Cir. 1993)).

"Claims of hurt feelings, humiliation, and other heartfelt, yet objectively trivial indignities, are not of Constitutional moment . . . ." Jackson v. Liberty County, 860 F. Supp. 360, 363 (E.D. Tex. 1994). "[C]itizens do not have a constitutional right to courteous treatment by the police. Verbal harassment and abusive language, while unprofessional and inexcusable, are simply not sufficient to state a constitutional claim under 42 U.S.C. § 1983." Slagel v. Shell Oil Refinery, 811 F. Supp. 378, 382 (C.D. Ill. 1993), aff'd, 23 F.3d 410 (7th Cir. 1994). In this case, plaintiff's allegations that Deputy Pinac told him "to watch his movement and he was on his list to be maced" and that Deputy Rester harassed him while he was in isolation by taunting him, clicking the lights on and off and spraying mace into the air, do not rise to the level of a constitutional violation. These allegations fail to state a claim upon which relief may be granted.

V.    RETALIATION

Magee asserts that defendants Deputy Rester and Sgt. Knight retaliated against him and placed him in isolation because he filed a complaint against them for misplacing his medication at pill call. The law in the Fifth Circuit concerning prisoner retaliation claims has undergone substantial evolution in recent years. It is based on the following general principles:

It is well established that prisoners enjoy a constitutional right of access to the courts. It is equally well established that prison officials may not retaliate against a prisoner for exercising this right. The elements of a retaliation claim are the invocation of a specific constitutional right, the defendants' intent to retaliate against the plaintiff for his or her exercise of that right, a retaliatory adverse act, and causation, i.e., but for the retaliatory motive the complained of incident . . . would not have occurred. With respect to the last element, we [have] emphasized that an action motivated by retaliation for the exercise of a constitutionally protected right is actionable even if the act, when taken for a different reason, may have been legitimate.

Clarke v. Stalder, 121 F.3d 222, 231 (5th Cir. 1997), vacated in part and reinstated in relevant part, 154 F.3d 186 (5th Cir. 1998) (citing Bounds v. Smith, 430 U.S. 817 (1977); Johnson v. Rodriguez, 110 F.3d 299, 310 (5th Cir. 1997); Woods v. Smith, 60 F.3d 1161, 1164-66 (5th Cir. 1995) (quotations and additional citations omitted).

In Woods, the Fifth Circuit, applying the general First Amendment principles addressed above, affirmed the district court's denial of defendants' motion for summary judgment, which had sought dismissal of a prisoner's retaliation claim. The Fifth Circuit agreed that the inmate's retaliation claim should be permitted to proceed, but in doing so it expressed the following caution: "The prospect of endless claims of retaliation on the part of inmates would disrupt prison officials in the discharge of their most basic duties. Claims of retaliation must therefore be regarded with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in state penal institutions."

Woods, 60 F.3d at 1166 (citation and quotation omitted).  The Fifth Circuit warned that trial courts must "carefully scrutinize these claims."  Id.

> To state a claim of retaliation <u>an inmate must allege the violation of a specific constitutional right</u> and be prepared to establish that but for the retaliatory motive the complained of incident . . . would not have occurred.  This places a significant burden on the inmate . . . .  The inmate must produce direct evidence of motivation or, the more probable scenario, "allege a chronology of events from which retaliation may plausibly be inferred."

Id. (citations omitted) (emphasis added).

A year later, the United States Supreme Court reexamined the scope of prisoners' First Amendment right of access to the courts in <u>Lewis v. Casey</u>, 518 U.S. 343 (1996).  The Supreme Court made clear in <u>Lewis</u> that an inmate <u>must establish actual injury</u> to state a claim for denial of his right of access to the courts.  The Court stated that the First Amendment right of prisoners to access to the courts is the right to "have a reasonably adequate opportunity to file <u>non</u>frivolous legal claims challenging their convictions or conditions of confinement."  <u>Id.</u> at 356 (emphasis added).

A year after <u>Lewis</u>, the Fifth Circuit reviewed another retaliation claim by inmates in <u>Johnson</u>.  In that case, a magistrate judge had concluded that certain aspects of the Texas parole system, which permitted parole board members to consider prisoners' participation in inmate litigation in connection with their parole determinations, violated

the inmates' First Amendment right of access to the courts. The appeals court reversed and remanded this portion of the trial court's findings. Johnson, 110 F.3d at 310-14.

The Fifth Circuit again noted the long recognized rule that prisoners generally enjoy a constitutional right of access to the courts. Id. at 310. Quoting the Supreme Court's decision in Lewis, however, the Fifth Circuit held that "[t]his right of access for prisoners is not unlimited . . . ; rather it encompasses only 'a reasonably adequate opportunity to file nonfrivolous legal claims challenging their convictions or conditions of confinement." Id. Significantly for present purposes, the Fifth Circuit concluded: "Thus, neither any frivolous filings nor secondary litigation activity, i.e., legal research and writing . . . , may comprise the basis of a retaliation claim." Id. (emphasis added).

Magee's retaliation claim in this case alleges no violation of a specific constitutional right as a result of any allegedly retaliatory acts. He has been afforded full access to this court. Actionable retaliation cannot occur in response to a frivolous claim. Thus, plaintiff wholly fails to establish any fact as to the actual injury/legal prejudice element of his First Amendment retaliation claim. Accordingly, his retaliation claim is legally frivolous and fails to state a claim upon which relief can be granted under Section 1983. It must be dismissed pursuant to 28 U.S.C. § 1915(e).

## VI.  RACIAL DISCRIMINATION IN TRUSTEE SELECTION

Magee alleges that he was denied equal protection in that Warden Cummings discriminated on the basis of race in the selection of jail trustees.  "Inmates have the constitutional right to be free from racial discrimination."  Bentley v. Beck, 625 F.2d 70, 71 (5th Cir. 1980).

"To state an equal protection claim, [Magee] must allege, inter alia, that similarly situated individuals have been treated differently and he must also allege purposeful or intentional discrimination."  McKnight v. Eason, 227 Fed. Appx. 356, 2007 WL 1334184, at *1 (5th Cir. 2007) (citation omitted); accord Baranowski v. Hart, 486 F.3d 112, 123 (5th Cir. 2007).  "A prisoner must show that the prison official acted with a discriminatory purpose and thus cannot base an equal protection claim solely on a personal belief that he was a victim of discrimination."  Jebril v. Joslin, No. C-07-436, 2008 WL 416240, at *8 (S.D. Tex. Feb. 12, 2008) (citing Woods v. Edwards, 51 F.3d 577, 580 (5th Cir. 1995); United States v. Galloway, 951 F.2d 64, 65 (5th Cir. 1992)). "Vague and conclusory allegations [of racial discrimination] are insufficient to raise an equal protection claim."  Id. (citing Pedraza v. Meyer, 919 F.2d 317, 318 n.1 (5th Cir. 1990)); accord Jones v. Castro, No. SA-6-CA-846-NSN, 2007 WL 3396500, at *4-5 (W.D. Tex. Nov. 13, 2007) (citing Al-Ra'id v. Ingle, 69 F.3d 28, 32 (5th Cir. 1995)).

In the instant case, Magee has proffered only vague and conclusory allegations, based solely on his personal, subjective belief, that he was similarly situated to white inmates who were trustees at the jail and that Warden Cummings discriminates against African-American inmates generally, and plaintiff particularly, in the assignment of trustee positions. Magee's conclusory allegations are insufficient to state a claim for a violation of his right to equal protection. See Al-Ra'id, 69 F.3d at 32 (Conclusory allegations of racial malice are insufficient to maintain an equal protection claim.); Portillo v. Brown, No. 2:07-CV-0031, 2009 WL 1160345, at *2 (N.D. Tex. Apr. 28, 2009) (citing Al-Ra'id, 69 F.3d at 32) (Hispanic inmate's allegations that non-Hispanic prison employee called him names, laughed at him and refused to dismiss disciplinary action against him, based on his race, were conclusory and failed to state a claim.); Webber v. Ramos, No. EP-04-CA-426-KC, 2007 WL 1039214, at *6 (W.D. Tex. Mar. 21, 2007) (citing Al-Ra'id, 69 F.3d at 32; Taylor v. Johnson, 257 F.3d 470, 474 (5th Cir. 1995)) (African-American inmate failed to state an equal protection claim with allegations that Hispanic prison employees discriminated against him based on his race when they removed him from one work assignment, denied him another particular work assignment and denied him the opportunity to file a formal complaint to challenge the assignments).

Moreover, Magee has no constitutional right to a particular status or classification within any prison, including specifically trustee status. The classification of inmates is an administrative function of the prison. Jones v. Diamond, 636 F.2d 1364, 1376 (5th Cir. 1981) (en banc).[2] Courts accord great deference to prison officials' administrative decisions and will not interfere with legitimate administration without a constitutional violation. Bell v. Wolfish, 441 U.S. 520, 547-48 (1979); Smith v. Bingham, 914 F.2d 740, 742 (5th Cir. 1990). "Inmates have a federal right to due process at prison classification . . . only if state law contains 'substantive predicates' limiting the prison administrators' discretion to classify, assign, and punish inmates." Ricker v. Leapley, 25 F.3d 1406, 1409 (8th Cir. 1994); accord Canterino v. Wilson, 869 F.2d 948, 953 (6th Cir. 1989) (citing Hewitt v. Helms, 459 U.S. 460, 472 (1983)). "Classification of inmates in Louisiana is a duty of the . . . [jailer] and an inmate has no right to a particular classification under state law." Woods v. Edwards, 51 F.3d 577, 581-82 (5th Cir. 1995) (citation omitted).

Thus, "[i]nmates have no protectable property or liberty interest in custodial classification. The classification of prisoners is a matter within the discretion of prison officials. Absent an abuse of discretion, federal courts are loathe to interfere with

---

[2]Overruled on other grounds by International Woodworkers of Am. v. Champion Int'l Corp., 790 F.2d 1174 (5th Cir. 1986), aff'd sub. nom. Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437 (1987).

custodial classifications established by prison officials." Whitley v. Hunt, 158 F.3d 882, 889 (5th Cir. 1998) (citations omitted), abrogated on other grounds by Booth v. Churner, 532 U.S. 732, 735 (2001). The Fifth Circuit "has continued to hold post-Sandin that an inmate has no protectable liberty interest in his classification." Wilkerson v. Stalder, 329 F.3d 431, 435-36 (5th Cir. 2003) (citing Sandin v. Conner, 515 U.S. 472 (1995)).

Federal courts, including the Fifth Circuit and district courts within it, have repeatedly held that an inmate has no protected liberty interest in becoming a trustee. See, e.g., Thomas v. Jordan, No. 07-60071, 2008 WL 4649095, at *1 (5th Cir. Oct. 21, 2008) (no constitutionally protected interest is implicated by prison officials' failure to classify inmate as a trustee, depriving him of opportunity to earn good time credits); Walker v. Buentello, 149 Fed. Appx. 286, 2005 WL 2404748, at *1 (5th Cir. Sept. 30, 2005) (prisoner has no constitutionally cognizable interest in trustee status); Donaldson v. Ducote, 112 Fed. Appx. 329, 331, 2004 WL 2320073, at *2 (5th Cir. Oct. 12, 2004) (no constitutionally cognizable liberty interest in transfer from trustee status to working cellblock); Jackson v. Harrison, No. 09-0742, 2009 WL 2708109, at *2 (W.D. La. Aug. 26, 2009) (James, J.) (prisoner's claim based on denial of trustee status dismissed as legally frivolous); Pulliam v. Epps, No. 4:08CV135-M-D, 2008 WL 4911812, at *1 (N.D. Miss. Nov. 13, 2008) (same); Inmates, Washington County Jail v. England, 516

F. Supp. 132, 141 (E.D. Tenn. 1980), aff'd, 659 F.2d 1081 (6th Cir. 1981) (both conferral and removal of trustee status are within discretion of jail administrators).

Accordingly, this claim must be dismissed.

## RECOMMENDATION

For all of the foregoing reasons, it is **RECOMMENDED** that plaintiff's complaint be **DISMISSED WITH PREJUDICE** as legally frivolous and/or for failure to state a claim under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Servs. Auto Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this ___1st___ day of December, 2009.

_____
JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE